**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **BLUE WATER BALTIMORE, INC.** | ) | |
| 2631 Sisson Street | ) | |
| Baltimore, Maryland 21211 | ) | |
| | ) | CIVIL ACTION - LAW |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **FLEISCHMANN'S VINEGAR COMPANY, INC.** | ) | No.: _____ |
| 1900 Brand Avenue | ) | |
| Industrial Court | ) | |
| Baltimore, MD 21209 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **KERRY INC.** | ) | |
| 3330 Millington Road | ) | |
| Beloit, Wisconsin 53511 | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**COMPLAINT**

Plaintiff Blue Water Baltimore Inc., by and through its attorneys, Chesapeake Legal Alliance, files this Complaint alleging the following:

**STATEMENT OF THE CASE**

1.      This is a citizen suit for declaratory and injunctive relief, the assessment of civil penalties, and other appropriate relief against Defendants Fleischmann's Vinegar Company, Inc. ("Fleischmann's Vinegar") and its parent company Kerry Inc. ("Kerry") for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* (hereinafter the Clean Water Act ("CWA")) and corresponding laws of the State of Maryland.

2.      These violations occurred and are occurring at the Fleischmann's Vinegar facility owned and operated by Fleischmann's Vinegar located at 1900 Brand Ave, Baltimore, Maryland 21209 ("the Facility").

3.      The State of Maryland is authorized to administer the CWA's National Pollutant Discharge Elimination System ("NPDES") permitting program. *See* 33 U.S.C. § 1342; Maryland Department of the Environment and U.S. Environmental Protection Agency, Memorandum of Agreement (1989).[1]

4.      The Maryland Department of the Environment ("Department") issued NPDES Permit No. MD0002101 (State Discharge Permit No. 17-DP-0075) ("the Permit"), effective July 1, 2020, which authorizes Defendants "to discharge non contact cooling water from the vinegar generators via Outfall 001" into the Jones Falls stream. No other discharges are authorized.

5.      Defendants use Baltimore City water for cooling processes during vinegar production at the Facility which it then is required to dechlorinate before discharging to the Jones Falls stream, which is a navigable waterway of the United States.

6.      On January 17, 2023, Plaintiff sent by certified mail a Notice of Intent to Sue letter ("NOI") for violations of the CWA to Fleischmann's Vinegar Company, its Registered Agent, and to the other recipients required to receive notice under the statute. *See* 33 U.S.C. § 1365(b)(1)(A); 40 C.F.R. § 135.2, 135.3; *See* January 17, 2023 Notice of Intent to Sue [hereinafter "NOI"] (attached as Exhibit A and incorporated by reference herein).

7.      Defendants have discharged and continue to discharge pollutants into the Jones Falls Stream in violation of Sections 301 and 402 of the CWA. 33 U.S.C. §§ 1311, 1342 by discharging effluent other than non contact cooling water from several locations. *See* Blue Water Baltimore Water Sampling Results (attached as Exhibit B and incorporated by reference herein).

---

[1] *available at*  https://www.epa.gov/sites/default/files/2013-09/documents/md-npdes-moa.pdf.

8.      Defendants have violated and are continuing to violate federal law by discharging unauthorized pollutants into the Jones Falls stream.

9.      Upon information and belief, Defendants have also not complied with and continue to not comply with effluent limits and other terms and conditions of the Permit.

## PARTIES

10.     Plaintiff Blue Water Baltimore is a 501(c)(3) nonprofit organization formed in 2010. It is dedicated to protecting clean water in the Baltimore, Maryland area. Blue Water Baltimore is headquartered at 2631 Sisson Street, Baltimore, Maryland. Its mission is to protect and restore the Baltimore Harbor, the greater Patapsco and Back Rivers, and their tributaries through enforcement, fieldwork, and citizen action on behalf of its members in order to make these waterways suitable for recreation (including fishing and swimming), to improve public health, and to improve the health of the aquatic ecosystems. Baltimore Harbor Waterkeeper, a program of Blue Water Baltimore, is responsible for protecting the Patapsco River and Back River watersheds, including all of the neighborhood streams and rivers that flow into the Patapsco and Back Rivers, including the Jones Falls stream ("Jones Falls"). Blue Water Baltimore has over 1,000 members, over 800 of whom live in Baltimore City and Baltimore County, surrounded by the Patapsco and Back Rivers, which drain to the Chesapeake Bay.

11.     Blue Water Baltimore supports its members by utilizing the CWA and other environmental laws to stop pollution that threatens public health, impairs water quality, damages ecosystems, and negatively impacts the ability of its members to use and enjoy the waterways of Baltimore. Blue Water Baltimore's members include individuals who participate in and enjoy many recreational activities in and around the Jones Falls.

12.     Blue Water Baltimore's members have been harmed by the violations alleged in this complaint. Pollution discharged from the Facility into the Jones Falls impairs water quality, threatens public health, and harms aquatic ecosystems, which have diminished Blue Water Baltimore's members' use and enjoyment of the Jones Falls by making it less likely that they will continue to enjoy recreating on and around the Jones Falls in the future.

13.     Blue Water Baltimore's members include individuals who frequently use and enjoy the Jones Falls and the area around the stream including: walking along trails and paths near the stream with their families and pets, enjoying the aesthetic value of the natural habitat, and observing wildlife.

14.     Blue Water Baltimore's members include individuals who have invested time in stream cleanups efforts to improve the water quality and ecosystem health for fish and wildlife, and who are concerned about the impact that the pollution from the Facility is having on the aquatic ecosystem. Blue Water Baltimore's members also include individuals who live in close proximity to the Jones Falls downstream of the Facility and have been impacted by Defendant's pollution violations. These individuals enjoy fishing but are unable to fish in the Jones Falls and are unable to allow their dogs and children to come into contact with the water due to pollution.

15.     A favorable decision in this matter would compel Defendants to comply with applicable laws and ensure that the operation of the Facility does not continue to negatively impact the water quality in the Jones Falls, and would lead to improvements in water quality and redress the adverse impacts which Defendants' illegal discharges are having on Plaintiff and its members.

16.      The injuries suffered by Blue Water Baltimore and its members as a result of Defendants' actions would be redressed by a declaratory judgment that Defendants are in

violation of the CWA; an injunction preventing Defendants from further violating the Act; and an order requiring Defendants to assess and remediate the harm caused by its violations and imposing civil penalties and the costs of litigation, including attorney's fees and future oversight cost. A favorable decision in this matter would compel Defendants to comply with applicable laws and ensure that the operation of the Facility does not continue to negatively impact the water quality of the Jones Falls and the Chesapeake Bay. Such a holding would lead to improvements in water quality and redress the concerns of the Plaintiff.

17.     The interests that Plaintiff seeks to protect are germane to its organizational purpose.

18.     Neither the claims asserted nor the relief requested require the participation of Plaintiff's individual members in this action.

19.     At all relevant times, Plaintiff was and is a "person" within the meaning of CWA, 33 U.S.C. § 1362(5).

20.     Defendant Fleischmann's Vinegar is the world's largest producer of commercial vinegar.[2]

21.     Defendant Fleischmann's Vinegar is incorporated in the state of Nebraska with Corporate Headquarters located in California.

22.     Defendant Fleischmann's Vinegar owns the Facility located at 1900 Brand Avenue, Baltimore, Maryland 22109. The Facility manufactures distilled vinegar for wholesale distribution.

---

[2] *See* Fleischmann's Vinegar, *About Us*, https://fleischmannsvinegar.com/about-us/ (last accessed April 3, 2023).

23.     Defendant Kerry is a global food company and is the parent company of Fleischmann's Vinegar and at all times relevant to this complaint participated in managing the Facility.

24.     Kerry is incorporated in Delaware and maintains a United States headquarters in Wisconsin.

25.     Kerry is registered to do business in the State of Maryland as "Kerry, Inc." under State Tax ID No. F13109251

26.     Kerry also operates its main global headquarters in Ireland with a registered office in County Kerry, Ireland.

27.     Fleischmann's Vinegar and Kerry are both "persons" within the meaning of the CWA, 33 U.S.C. § 1362(5).

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction over this action pursuant to 33 U.S.C. § 1365(a) and 28 U.S.C. § 1331.

29.     Pursuant to 33 U.S.C. § 1365(c), venue is proper because the CWA violations alleged in this Complaint occurred and continue to occur in this District.

30.     Pursuant to the CWA, 33 U.S.C. § 1365(b)(1)(A) (requiring 60-day notice), Blue Water Baltimore, ("Plaintiff") gave notice, more than 60 days prior to commencing this action, to all required parties including Fleischmann's Vinegar Company, Inc.

31.     Blue Water Baltimore has satisfied the 60-day notice provision of the CWA and no bar to citizen enforcement exists because neither EPA nor the State of Maryland have commenced a civil or criminal enforcement action in federal or state court. 33 U.S.C. § 1365(b)(1)(A), (B);

32.     Neither EPA nor the State of Maryland has commenced or is diligently prosecuting a civil or criminal action against Defendants in a court of the United States or of the State of Maryland, or pursuing an administrative penalty action, to require compliance with the laws, rules, regulations, permits, standards, or limitations at issue in this case.

33.     As explained in detail below below, Defendants are: discharging unpermitted effluent into the Jones Falls stream in violation of the CWA and state laws; violating effluent standards and limitations set forth in the Permit; and not operating the Facility in a manner that achieves compliance with the terms and conditions of the Permit.

34.     Defendants have failed to abate violations alleged, and the violations alleged herein will likely continue until this Court enjoins Defendants from discharging in violation of the Permit and orders Defendants to address and remedy the underlying causes of the violations.

## STATUTORY AND REGULATORY FRAMEWORK

35.     The CWA prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as an NPDES permit issued by EPA or an authorized state pursuant to Section 402 of the CWA. 33 U.S.C. §§ 1311(a), 1342.

36.     The term "discharge of pollutants" is defined in section 502(12) of the CWA, 33 U.S.C. § 1362(12), to mean "any addition of any pollutant to navigable waters from any point source…"

37.     The term "pollutant" is defined in section 502(6) of the CWA, 33 U.S.C. § 1362(6), to mean "dredged spoil, solid waste. . . sewage. . . sewage sludge. . . chemical wastes, biological materials. . . . and industrial, municipal . . . waste discharged into water."

38.    The term "point source" is defined in section 502(14) of the CWA, 33 U.S.C. § 1362(14), to mean "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container…from which pollutants are or may be discharged."

39.    Section 402(a) of the Act, 33 U.S.C. § 1342(a), provides that the EPA may issue NPDES permits that authorize the discharge of any pollutant, but only in compliance with, *inter alia*, section 301 of the Act, 33 U.S.C. § 1311, and such other conditions as EPA determines are necessary to carry out the provisions of the Act.

40.    The term "person" means an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body. 33 U.S.C. § 1362(5)

41.    Section 402(b) of the Act, 33 U.S.C. § 1342(b), provides that a State may establish its own permit program and, after receiving approval of its program by the EPA, may issue NPDES permits.

42.    Under COMAR 26.08.04.07, the State of Maryland established its own NPDES permit program and received EPA approval of its program in 1974. The Department issues NPDES permits under Title 9 of the Environment Article of the Annotated Code of Maryland.

43.    40 C.F.R. § 122.41 states that permittees "must comply with all conditions of this permit. Any permit noncompliance constitutes a violation of the Clean Water Act and is grounds for enforcement action…" 40 C.F.R. § 122.41(a)

44.    Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), allows citizens to bring suit against "any person…alleged to be in violation" of an "effluent standard or limitation"

established under the CWA or "an order issued by…a State with respect to such a standard or limitation."

45.     Section 505(f)(7), 33 U.S.C. § 1365(f)(7) defines "effluent standard or limitation" as "a permit or condition of a permit issued under section 402 [33 U.S.C. § 1342]." A NPDES Permit, and any limitations or conditions contained in that permit pertaining to any discharge or potential discharge from the facility covered by it, are "effluent standard[s] or limitation[s]" as defined by section 505(f)(7) of the CWA, 33 U.S.C. § 1365(f)(7).

46.     In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order Defendants to comply with the CWA and to assess civil penalties.

47.     Under Section 505(d) of the CWA, 33 U.S.C. § 1365(d), the court may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate.

48.     Section 309(d) of the Act, 33 U.S.C. § 1319(d), provides that any person who violates, *inter alia*, section 301 of the Act, 33 U.S.C. § 1311, or who violates any condition or limitation of an NPDES permit issued pursuant to section 402 of the Act, 33 U.S.C. § 1342, shall be subject to a civil penalty.

49.     Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, any person who violates sections 301 and 402 of the Act, 33 U.S.C. §§ 1311 and 1342, shall be subject to a civil penalty up to $64,618 per day per violation occurring on or after January 13, 2009. *See also* 40 C.F.R. § 19.4 for violations that occurred after November 2, 2015 where

penalties are assessed after January 6, 2023. 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4 (Table 1 – Civil Monetary Penalty Inflation Adjustments).

50.     Maryland State law prohibits the unauthorized discharge of pollutants to waters of the State and requires that all discharges of pollutants to waters of the state be authorized by a permit. Md. Code Ann., Envir. §§ 9-322 and 9-323; Md. Code Regs. 26.08.03.01.

<u>**FACTUAL BACKGROUND**</u>

51.     Defendants manufacture white distilled vinegar at the Facility which is stored and/or blended to meet customer specifications and is shipped off site via tanker truck or 55-gallon drums.

52.     Defendants currently operate the Facility under NPDES Permit No. MD0002101 (State Discharge Permit No. 17-DP-0075), effective July 1, 2020 and expiring June 30, 2025, pursuant to § 402 of the CWA, 33 U.S.C. §1342(b). The Permit authorizes Defendants to discharge non-contact cooling water to the Jones Falls via a single point designated as "Outfall 001," in accordance with certain effluent limitations, monitoring requirements, and other conditions set forth in the Permit.

53.     The Permit authorizes discharges from only Outfall 001; no other water pollution discharges are authorized by the Permit.

54.     Outfall 001 is described in the Permit as a single "6 or 8 [inch] pipe at the Northwest edge of the property, approximately 30 feet above the receiving water body." The only effluent Defendants are permitted to discharge from the Facility is non-contact cooling water used during the cooling stage of the vinegar manufacturing process.

55.     According to the Permit documents, Defendants use Baltimore City water which does not come into contact with any of the raw materials or product. Prior to discharging via

Outfall 001, Defendants are required to remove chlorine from the non-contact cooling water to permissible limits.

56.     Outfall 001 discharges directly into the Jones Falls, which flows to the Baltimore Harbor, Patapsco River, and ultimately the Chesapeake Bay. Outfall 001 is a point source under the CWA. 33 U.S.C. § 1362(14).

57.     According to the Permit documents, water from spills, leaks, and other sources at the Facility is collected and discharged to the Baltimore City sanitary sewer.

58.     Defendants are required to manage and control stormwater generated at the Facility by implementing a stormwater pollution prevention plan ("SWPPP") and complying with the terms of the Maryland General Discharge Permit for Discharges Associated with Industrial Activities.

59.     The Permit establishes, among others, the following effluent limits:

   a.   pH: 6.5 minimum and 8.5 maximum.

   b.   Dissolved Oxygen: 5.0 minimum.

   c.   Total Residual Chlorine: 0.011 mg/l monthly average and 0.019 daily maximum.

   d.   Temperature Difference: Temperature Difference is a calculated value, arrived at by subtracting the ambient receiving water temperature or 75 degrees Fahrenheit F (whichever is higher) from the effluent temperature or the temperature of the receiving water at the edge of a mixing zone (whichever is lower). Such mixing zone is defined as a maximum of 50 feet.

60.     Special Condition A and General Condition A detail how the Facility must monitor and report on operations. Special Condition A and General Condition A also require

Defendants to submit timely and accurate Discharge Monitoring Reports ("DMRs") verifying compliance with Permit effluent limits.

61.     The Permit contains Special and General Conditions that establish additional enforceable requirements for the Facility's operation. Conditions require, among other things, the following:

> a.   General Condition B.3 requires that "[a]ll treatment, control, and monitoring facilities, or systems installed or used by [Defendants], are to be maintained in good working order and operated efficiently."
>
> b.   General Condition B.4 requires Defendants "take all reasonable steps to minimize or prevent any adverse impact to waters of the State or to human health resulting from noncompliance with any effluent limitations specified in this permit, including such accelerated or additional monitoring as necessary to determine the nature and impact of the noncomplying discharge."

**The Jones Falls**

62.     The Jones Falls is a nontidal stream that flows through Baltimore County and Baltimore City, which is ultimately channelized through an underground tunnel for approximately 1.5 miles before emptying into the Northwest Branch of the Tidal Patapsco River, also known as the Baltimore Harbor.

63.     The portion of the Jones Falls near the Facility flows freely and is not confined by any hardscape or conveyances. The Jones Falls stream meanders through the City adjacent to the Jones Falls Trail, a highly-trafficked pedestrian and bike path that provides intermittent access to the stream itself and provides access to nature, in an otherwise highly built City environment.

64.     The Facility is approximately 1,000 feet upstream of a trailhead for the Jones

Falls Trail, which provides stream access and recreational and aesthetic enjoyment for community members including members of BWB.

65.     The Jones Falls mainstem is designated a Use Class IV - Recreational Trout Waters water body, protected for water contact recreation, fishing, aquatic life, and wildlife, and its tributaries are designated Use Class I - Water Contact Recreation, and Protection of Nontidal Warmwater Aquatic Life.

66.     Multiple fish species have been identified in this segment of the Jones Falls including *Anguilla rostrata* (American eel). The area is also a known and established nesting ground for the Yellow-Crowned Night Heron, a neotropical migratory bird species.

67.     Several families of pollution-sensitive benthic macroinvertebrates have been documented in the stretch of the Jones Falls adjacent to the Facility including *Nemouridae* (Nemourid Stonefly), Ameletidae (Minnow Mayfly), *Leucridae* (Rolledwinged Stonefly), and *Rhyacophilidae* (Freeliving Caddisfly).

68.     The Jones Falls is a navigable water of the United States within the meaning of the CWA. 33 U.S.C. § 1362(7).

69.     The Department has listed the Jones Falls, pursuant to Section 303(d) of the CWA, 33 U.S.C. § 1313(d), as impaired for the following pollutants: Total Suspended Solids (TSS), Fecal Coliform, Sulfate, Habitat Alterations, Temperature, and PCBs.

70.     The EPA has approved the Department's Total Maximum Daily Loads ("TMDL") for Fecal Coliform, Total Suspended Solids, and PCBs in fish tissue.

***Unpermitted Discharges***

71.     From September 12, 2021 through to the filing of this Complaint, there have been numerous unpermitted discharges from multiple discharge points at the Facility.

72.     Defendants routinely discharge effluent from the Facility into the Jones Falls stream from an unpermitted metal pipe adjacent to Outfall 001 which is not authorized in the Permit. This metal pipe is described as "Discharge Point A" in Plaintiff's NOI. *See* Exhibit A.

73.     Discharges from this unpermitted metal pipe were documented on: September 12, 2021; September 13, 2021; October 8, 2021; November 8, 2022; November 18, 2022; December 5, 2022; January 12, 2023; and March 20, 2023.

74.     On September 13, 2021 the effluent discharging from the unpermitted metal pipe had a total residual chlorine (TRC) level of .44 mg/L, which exceeds Permit limits.

75.     On December 5, 2022 and January 12, 2023 effluent from the metal pipe also contained the following pollutants: Ammonia as N, Total Nitrogen, Chloride, Fluoride, Nitrate, Nitrate as N, and Sulfate. *See* Exhibit B.

76.     Defendants have also discharged and continue to discharge pollutants into the Jones Falls stream through cracks and fissures in the Facility's concrete wall/foundation, as well as in visible plumes instream emanating from the Facility's concrete wall/foundation under the stream surface. These cracks and fissures from the Facility are described as "Discharge Point B and C" in Plaintiff's NOI. *See* Exhibit A.

77.     Discharge from multiple cracks and fissures from the Facility wall and foundation were documented on: November 29, 2021; November 8, 2022; November 18, 2022; December 5, 2022; January 12, 2023; March 20, 2023.

78.     The following pollutants have been documentented in the effluent discharge from the cracks and fissures of the Facility into the Jones Falls Stream: low pH levels, Acetic acid, Total Copper, Total Iron, Total Lead, Arsenic, Selenium, Ammonia as N, Total Nitrogen, Anions-Chloride, Anions-Fluoride, Anions-Nitrate, Anions-Nitrate as N, Anions-Sulfate,

Phosphate as P, Total Phosphorus, and Butyric acid. *See* Exhibit B, Table of Water Quality Results. *See* Exhibit B.

79.     Discharges from the Facility violate the Numeric Criteria for Toxic Substances in Surface Water under COMAR 26.08.02.03-2, including but not necessarily limited to Total Copper and Total Lead.

80.     On January 12, 2023 the effluent discharged from the cracks and fissures of the Facility contained Total Copper levels of 188 ug/L, which exceeds the State of Maryland's Numerical Criteria for Toxic Substances in Surface Waters. COMAR 26.08.02.03-2.

81.     On January 12, 2023 the effluent discharged from the cracks and fissures of the Facility contained Total Lead levels of 145 ug/L, which exceeds the State of Maryland's Numerical Criteria for Toxic Substances in Surface Waters. COMAR 26.08.02.03-2.

82.     On information and belief, Defendants have discharged unauthorized pollutants from the Facility into the Jones Falls stream via a stormwater outfall on at least 13 occasions.

83.     Discharges from the stormwater outfall included the following pollutants: low pH, Copper, Iron,  Lead, Arsenic, Ammonia as N, Total Nitrogen,  Anions - Chloride, Anions - Nitrate, Anions Nitrate as N,  Sulfate, Phosphorus, Acetic Acid, Butryic Acid, Lactic acid, and Propionic acid. *See* Exhibit B.

***Effluent Limit Exceedances***

84.     From September 2018 to the time of filing this Complaint, the Facility exceeded Permit effluent limits at least 12 times for pollutants including pH, Temperature Difference, Total Residual Chlorine, and Dissolved Oxygen.[3]

---

[3] *See* U.S. EPA, ECHO Effluent Limit Exceedances Report NPDES, Permit https://echo.epa.gov/trends/loading-tool/reports/effluent-exceedances?permit_id=MD0002101 ("Adjust Date Range" to Jan 2018 - Apr 2023; select "Apply Changes").  *See also* Exhibit A at 5-8.

85.     From September 2021 to the time of filing this Complaint, the Defendants also violated effluent limits with unpermitted discharges coming from various parts of the Facility. These unpermitted discharges have occurred at least 28 times over this time period.

***Facility Operation, Maintenance, and Adverse Impact***

86.     The repeated unpermitted and unauthorized discharges, effluent limit exceedances, and failure to comply with Permit conditions described in this Complaint, Exhibit A and Exhibit B, demonstrate that the Facility is not in good working order or operating efficiently. Department inspection reports from 2021 and 2022 detail repeated instances of Defendants failing to operate its treatment, control, and monitoring systems efficiently and in good working order in continuous violation of Permit General Condition B.3.

87.     Defendant's repeated unpermitted and unauthorized discharges, effluent limit exceedances, and other Permit condition violations demonstrate that they have failed to take "all reasonable steps to minimize or prevent any adverse impact to waters of the State or to human health resulting from noncompliance with any effluent limitations specified in this permit, including such accelerated or additional monitoring as necessary to determine the nature and impact of the noncomplying discharge" and are thus in continuous violation of Permit General Condition B.4.

88.     Acidic discharges into the Jones Falls changes the pH of the ambient stream. The established water quality standard for pH in Use Class I-IV waterways in Maryland is between 6.5-8.5 standard units. Excursions outside of this range are detrimental to aquatic life including the fish and benthic macroinvertebrates that live in these waters. Water that is too acidic makes an inhospitable ecosystem for these organisms.

89.     According to the U.S. Environmental Protection Agency, fluctuating pH or

sustained pH outside of the 6.5-8.5 range physiologically stresses many species and can result in decreased reproduction, decreased growth, disease or death. This can ultimately lead to reduced biological diversity in streams.

90.     Even small changes in pH can shift community composition in streams. This is because pH alters the chemical state of many pollutants (e.g., copper, ammonia), changing their solubility, transport, and bioavailability. This can increase exposure to and toxicity of metals and nutrients to aquatic plants and animals.

91.     As described above, BWB has documented unpermitted discharges from the Facility with low pH on several occasions. *See* Exhibit B.

92.     BWB has documented excessive algal growth on the submerged rocks in the Jones Falls downstream of the acidic discharges emanating from the exterior wall of the Facility and from the stormwater outfall.

93.     The submerged algal growth makes the rocks in the stream very slippery and difficult/dangerous to traverse.

94.     BWB has documented submerged algal growth downstream of the Facility that is much lighter in color on the left side looking downstream than it is on the right side looking downstream. This is consistent with lower pH readings on the left side looking downstream than on the right side looking downstream, and is consistent with the location of the Facility's wall discharging acidic effluent on the left side looking downstream.

95.     Submerged algal growth can be exacerbated by an increased amount of nitrogen in the stream, as nitrogen is a known limiting reagent that regulates aquatic organism growth and function.

96.     There have been two fish kill events in the Jones Falls immediately adjacent to the

Facility. The first event occurred on September 12, 2021 and the second on November 8, 2022.

97.     Both fish kill events there were dead fish documented downstream of the Facility but none upstream and a strong odor reported near the Facility.

98.     On September 12, 2021 BWB staff received a report from a community member of dead fish in the Jones Falls, and a strong smell of vinegar in the area.

99.     BWB arrived at the location of the reported fish kill and noted that every fish in the stream appeared to be dead or dying. BWB documented approximately 1,000 dead fish in the Jones Falls stream from the area directly adjacent to the Facility to an area 3,500 feet downstream of this location.

100.     Distressed fish were bleeding from their gills, and many fish had a whitish opaque film on their eyes and their bodies.

101.     Individual fish species documented in this fish kill included American Eel, Crayfish, Northern Suckers, Green Sunfish, Blacknosed Dace, and Bluegills.

102.      The dead American Eel in the area appeared to have some type of chemical burn on its skin, and pieces of its skin were sloughed off and laying in the water nearby.

103.     On October 23, 2022 BWB received a report from a community member about a very strong smell of vinegar and bleached plants in the Jones Falls stream in the same location as the September 12, 2021 fish kill event.

104.     BWB investigated the area that day and documented bleached algae and a strong odor of vinegar.  BWB reported these findings to the Department on October 24, 2022.

105.     BWB conducted a follow-up investigation of the Jones Falls stream on November 8, 2022.  On that date,  BWB documented 20 dead Northern Sucker fish in a 300-foot segment of the  stream next to the Facility.

106.    Based on staff experience and knowledge and the advanced decaying condition of the fish, BWB concluded that this was likely the remnants of a larger fish kill that had mostly already washed away.

107.    The violations alleged in this Complaint continue and are likely to  continue until this Court orders Defendants to abate the violations and take all steps necessary to come into full compliance with the CWA.

### CAUSES OF ACTION

**Violations of the Clean Water Act**

**COUNT 1**

**Violation of 33 U.S.C. §§ 1311 and 1342**

**(Unauthorized Discharge of Pollutants to Waters of the U.S.)**

108.    Plaintiff realleges and incorporates by reference all of the allegations of all preceding paragraphs.

109.    Defendants have discharged and continue to discharge pollutants into the Jones Falls via the following unpermitted and unauthorized point sources: a metal pipe; several cracks and fissures of the Facility building itself; and a storm drain outfall.

110.    As a result of unpermitted discharges to the Jones Falls stream, Defendants have violated and are violating Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, which prohibit the "discharge of pollutants" except in compliance with conditions of a NPDES permit.

111.    Defendants have violated the Clean Water Act, 33 U.S.C. §§ 1311 and 1342, by discharging unauthorized pollutants into the Jones Falls stream from an unpermitted metal pipe adjacent to Outfall 001 on at least seven separate occasions, including at least once with effluent with a TRC level of .66 mg/L. On at least two occasions, effluent from the metal pipe also

contained the following pollutants: Ammonia as N, Total Nitrogen, Chloride, Fluoride, Nitrate, Nitrate as N, and Sulfate. *See* Exhibit B.

112.    Defendants have violated the Clean Water Act, 33 U.S.C. §§ 1311 and 1342, by discharging unauthorized pollutants into the Jones Falls stream on at least 11 separate occasions through cracks and fissures in the Facility's concrete wall and foundation.

113.    Discharges from the cracks and fissures in the Facility's concrete wall and foundation included at least the following pollutants: low pH levels, Acetic acid, Total Copper, Total Iron, Total Lead, Arsenic, Selenium, Ammonia as N, Total Nitrogen, Anions-Chloride, Anions-Fluoride, Anions-Nitrate, Anions-Nitrate as N, Anions-Sulfate, Phosphate as P, Total Phosphorus, and Butyric acid. *See* Exhibit B, Table of Water Quality Results. *See* Exhibit B

114.    Pollutants discharged from the cracks and fissures of the Facility wall on January 12, 2023 contained Total Copper levels of 188 ug/L, which exceeds the State of Maryland's Numerical Criteria for Toxic Substances in Surface Waters. COMAR 26.08.02.03-2.

115.    Pollutants discharged from the cracks and fissures of the Facility wall on January 12, 2023, contained Total Lead levels of 145 ug/L, which exceeds the State of Maryland's Numerical Criteria for Toxic Substances in Surface Waters. COMAR 26.08.02.03-2.

116.    On information and belief, Defendants have violated the Clean Water Act, 33 U.S.C. §§ 1311 and 1342, by discharging unauthorized pollutants from the Facility into the Jones Falls stream via a stormwater outfall on at least 13 occasions.

117.    Discharges from the stormwater outfall included the following pollutants: low pH, Copper, Iron,  Lead, Arsenic, Ammonia as N, Total Nitrogen,  Anions - Chloride, Anions - Nitrate, Anions Nitrate as N,  Sulfate, Phosphorus, Acetic Acid, Butryic Acid, Lactic acid, and Propionic acid. *See* Exhibit B.

118.    On information and belief, the violations described in this complaint are ongoing and continuous, and unless enjoined by an order of the Court, violations of the Clean Water Act are likely to continue.

119.    The CWA provides that any person who violates, *inter alia*, Section 301 of the Act, 33 U.S.C. § 1311, or who violates any condition or limitation of a NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342, shall be subject to a civil penalty of up to $64,618 per day per violation occurring on or after November 2, 2015, where penalties are assessed on or after January 6, 2023. 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4 (Table 1 – Civil Monetary Penalty Inflation Adjustments).

## COUNT 2

### Violation of 33 U.S.C. §§ 1311 and 1342

### (Failure to Comply with NPDES Permit Conditions)

120.    Plaintiff realleges and incorporates by reference all of the allegations of all preceding paragraphs.

121.    The Permit establishes effluent limits detailed at Paragraph 59 above.

122.    Defendants have exceeded Permit limits for pollutants: pH, Total Residual Chlorine, Dissolved Oxygen, and Temperature Difference, at least 12 times from January 2018 - present out of permitted Outfall 001.

123.    From September 2021 to the time of filing this Complaint, Defendants have repeatedly violated the Permit by discharging pollutants from unpermitted point sources that were not Outfall 001. These locations are described in detail above including a metal pipe adjacent to Outfall 001, cracks and fissures in the wall and foundation of the Facility, and a

stormwater outfall. These unpermitted discharges have occurred at least 28 times over this time period.

124.    Defendants have violated and are violating Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, which prohibit the "discharge of pollutants" except in compliance with conditions of a NPDES permit.

125.    Based on information and belief, Defendants have not complied with General Conditions B.3 and B.4 of the Permit.

126.    Defendants have not complied with General Condition B.3 by failing to maintain and operate the Facility efficiently and in good working order, which is a violation of General Condition B.3 and is an enforceable violation of the CWA. 33 U.S.C. § 1365(a)(1)(A).

127.    Defendants have violated General Condition B.4 of the permit by not taking reasonable steps to minimize the adverse impact of these effluent limit exceedances and unpermitted and unauthorized discharges.

128.    Defendants have violated and are violating Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, which prohibit the "discharge of pollutants" except in compliance with conditions of a NPDES permit.

129.    Defendants have continuously failed to comply with General Conditions B.3 and B.4. This failure constitutes an enforceable violation of the CWA. 33 U.S.C. § 1365(a)(1)(A).

130.    Each day that Defendants fail or have failed to comply with any Permit condition is a separate violation of the CWA for which a penalty up to $64,618 can be assessed. 33. U.S.C. § 1319(d).

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff respectfully requests that the Court:

A.      Declare that the Defendants are in violation of the Clean Water Act and implementing regulations, and the Permit;

B.      Enjoin Defendants from further violation of the Clean Water Act and implementing regulations, and the Permit;

C.      Order Defendants to:

    a.  Immediately comply with all legal requirements including the Clean Water Act and Permit terms and conditions;

    b.  Assess and remediate the harm caused by the violations;

D.  Assess civil penalties against the Defendants and/or require environmental projects to benefit the residents in areas impacted by pollution violations;

E.  Award Plaintiff the cost of litigation, including reasonable attorney's fees, costs, and expert fees and expenses;

F.  Retain jurisdiction until Defendants have fulfilled all legal and Court-ordered obligations; and,

G.  Grant such further relief as the Court deems just and proper.

Dated: April 4, 2023

Respectfully submitted,

*/s/ Angela Haren*
Angela Haren - MD Bar No. 30257
Chesapeake Legal Alliance
106 Ridgely Avenue
Annapolis, MD 21401
Telephone: (410) 216-9441
Email: angela@chesapeakelegal.org

*/s/ Patrick DeArmey*
Patrick DeArmey – MD Bar No. 21906
Chesapeake Legal Alliance
106 Ridgely Avenue
Annapolis, MD 21401
Telephone: (410) 216-9441
Email: patrick@chesapeakelegal.org

*Attorneys for Plaintiff Blue Water Baltimore*