`IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**BLUE WATER BALTIMORE, INC.**,

*Plaintiff,,*

v.                                            *          Civil Case No: 1:23-cv-00917-JMC

**FLEISCHMANN'S VINEGAR
COMPANY, INC. et al.**,               *

*Defendants.*

\*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Blue Water Baltimore, Inc. filed the present action against Fleischmann's Vinegar Company, Inc. ("Fleischmann's") and Kerry Inc. (collectively "Defendants") on April 4, 2023, alleging violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA") "and state laws." (ECF No. 1 at p. 7).[1] Plaintiff then amended its Complaint on April 26, 2023, as a matter of right pursuant to Fed. R. Civ. P. 15(a) and included additional allegations that Defendants violated the Resources Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq*. ("RCRA"), and clarified that Defendants allegedly violated Md. Code Ann., Envir. § 9-322 and the Code of Maryland Regulations ("COMAR") 26.08.02.03-2. (ECF No. 8; ECF No. 8-1 at p. 11). Presently before the Court is Plaintiff's Motion for Leave to file a Second Amended Complaint (the "Motion") to (1) add a new defendant, Kerry Holding Co.; (2) revise the description of the relationship between Defendants Kerry Inc. and Fleischmann's Vinegar Company, Inc.; and (3) incorporate additional dates of violations of the CWA, the RCRA, and

---

[1] When the Court cites to a particular page number or range, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of each electronically filed document.

"corresponding laws of the State of Maryland that have occurred since the filing of the Amended Complaint on April 26, 2023." (ECF No. 19-1 at p. 1). The Court has considered the Motion, Defendants' Opposition thereto (ECF No. 20), and Plaintiff's Reply (ECF No. 23). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons explained below, Plaintiff's Motion is **GRANTED**.

I. **BACKGROUND**

    a. **General Background and Procedural History**

Plaintiff is a nonprofit organization formed in 2010 dedicated to "protecting clean water in the Baltimore, Maryland area." (ECF No. 8 at p. 3). "Its mission is to protect and restore the Baltimore Harbor, the greater Patapsco and Back Rivers, and their tributaries through enforcement, fieldwork, and citizen action on behalf of its members in order to make these waters suitable for recreation (including fishing and swimming), to improve public health, and to improve the health of the aquatic ecosystems." *Id.* at pp. 3–4. Defendant Fleischmann's Vinegar is the self-proclaimed world's largest producer of commercial vinegar and owns a production facility in Baltimore, Maryland, which manufactures distilled vinegar for wholesale distribution. *Id.* at p. 6. Defendant Kerry Inc. is a global food company and, until the present Motion, was believed to be the parent company of Defendant Fleischmann's at all times relevant to Plaintiff's lawsuit. *Id.*

Plaintiff's Amended Complaint alleges that Defendants violated the aforementioned statutes by allowing unauthorized pollutants to be discharged into the Jones Falls stream.[2] In both

---

[2] Considered a local gem in the metro-Baltimore area, Jones Falls is a water stream in Maryland that historically served as a transportation corridor and is often enjoyed contemporarily for its scenic hiking and bicycling trails. *See, e.g.*, *Jones Falls Trail*, BALT. DEP'T OF RECREATION & PARKS, https://bcrp.baltimorecity.gov/parks/trails/jones-falls (last visited October 23, 2023); *Jones Falls Trail*, JONES FALLS TRAIL, https://jonesfallstrail.us/ (last visited October 23, 2023); *see also* (ECF No. 8 at ¶ 74) ("The Jones Falls is a nontidal stream that flows through Baltimore county and Baltimore City, which is ultimately channelized through an underground tunnel for approximately 1.5 miles before emptying into the Northwest Branch of the Tidal Patapsco River, also known as the Baltimore Harbor.").

the Complaint and Amended Complaint, Plaintiff described Kerry Inc. as the parent company of Fleischmann's.  However, Defendants filed a corporate disclosure statement on May 15, 2023, as required by the Local Rules of this Court indicating that a newly disclosed entity—Kerry Holding Co.—is the parent company of both Fleischmann's and Kerry Inc.  (ECF No. 2 at p. 2; ECF No. 9); *see* Loc. R. 103.3 (D. Md. 2023).  Defendants then filed an Answer to Plaintiff's Amended Complaint on June 6, 2023, in which Defendants denied that Kerry Inc. is Fleischmann's parent company but provided no description of the relationship between the two already-named Defendants and made no mention of Kerry Holding Co.  *See generally* (ECF No. 10).

On July 19, 2023, Plaintiff sent interrogatories to Defendants requesting information regarding the relationship and corporate structure between Kerry Holding Co., Fleischmann's, and Kerry Inc.  (ECF No. 19-1 at p. 3).  Defendants responded to those interrogatories on August 18, 2023, by indicating again that Kerry Holding Co. is the parent company of both Fleischmann's and Kerry Inc., and that Kerry Holding Co. owns 100% of Fleischmann's stock.  *Id.*  On information and belief, all three entities—Kerry Holding Co., Kerry Inc., and Fleischmann's—"exercise some amount of control of and have involvement in the operation of the Fleischmann's Vinegar Facility where the alleged violations occurred" and "all three entities share the same directors and officers."  *Id.*  For instance, Plaintiff avers that Kerry Inc. "provides shared services to Fleischmann's Vinegar, including but not limited to providing in-house counsel, interim management of the Vinegar Facility, and health, safety, and environmental management services for the Vinegar Facility."  *Id.*  This is buttressed by the public records request made by Plaintiff on the Maryland Department of the Environment ("MDE") and MDE's inspections of the vinegar manufacturing facility in question, the results of which indicated that: (1) Defendant Fleischmann's is the Facility Operator of the vinegar manufacturing facility and Defendant Kerry

Inc. is the Facility Owner; (2) managerial staff employed at the vinegar facility hold titles indicating that they work for both Defendants Fleischmann's and Kerry Inc.; and (3) managerial staff employed at the vinegar facility submitted applications to conduct work in Jones Falls further conflating the relationship between the two already-named Defendants.[3] *Id.* at p. 4. Plaintiff then filed the present Motion seeking leave to file a Second Amended Complaint. (ECF No. 19).

### b. Factual Allegations Set Forth in Plaintiff's Proposed Second Amended Complaint

The State of Maryland is authorized to administer the CWA's National Pollutant Discharge Elimination System ("NPDES") permitting program. (ECF No. 8-3 at ¶ 3). The MDE issued Defendants NPDES permit No. MD0002101, effective July 1, 2020, which authorizes Defendants to "discharge non contact cooling water from the vinegar generators via Outfall 001" into the Jones Falls stream. *Id.* at ¶ 4. Defendants' facility is also permitted under the RCRA as a "Very Small Quantity Generator" to generate the following hazardous wastes: potassium permanganate, ethanol, phosphoric acid, and sulfuric acid. *Id.* at ¶ 6. Defendants' discharges are authorized only from Outfall 001, which is a single "6 or 8 [inch] pipe at the Northwest edge of the property, approximately 30 feet above the receiving water body." *Id.* at ¶ 66. Defendants are also required to remove chlorine from the non-contact cooling water to permissible limits before discharging the non-contact cooling water from Outfall 001. *Id.* at ¶ 67. Notably, Outfall 001 discharges directly into Jones Falls, which consequently flows into the Baltimore Harbor, Patapsco River, and Chesapeake Bay. *Id.* at ¶ 68.

---

[3] Specifically, Plaintiff submits that (1) during the MDE's inspections of the vinegar facility, it discovered that "contacts for the Vinegar Facility hold titles such as: Plant Manager of Fleischmann's Vinegar Company and Senior Health, Safety, and Environment Manager of Kerry"; and (2) "the Plant Manager of the Vinegar Facility submitted a Joint Federal/State Application for the Alteration of Any Floodplain Waterway, Tidal or Nontidal Wetland in Maryland to conduct work in the Jones Falls adjacent to the Vinegar Facility" with the applicant company name being listed initially as "Fleischmann's Vinegar, A Kerry® Company" but denoting elsewhere that the applicant is "Kerry Fleischmann's Vinegar Company." (ECF No. 19-1 at p. 4).

Defendants are required to manage and control stormwater generated at the vinegar manufacturing facility and comply with the terms of the Maryland General Discharge Permit for Discharges Associated with Industrial Activities, which establishes various effluent limits. *Id.* at ¶ 70–71. Additionally, Defendants are required to abide by Special and General Conditions that establish enforceable requirements for the vinegar facility's operation, including requirements that Defendants maintain their facilities and systems in good working order and that Defendants take all reasonable steps to minimize or prevent any adverse impact to Maryland's waters or people resulting from any noncompliance with effluent limitations. *Id.* at ¶ 73.

According to Plaintiff, there have been numerous unpermitted discharges at Defendants' vinegar manufacturing facility from September 12, 2021, through the filing of Plaintiff's lawsuit. *Id.* at ¶ 83. Specifically, Plaintiff contends that Defendants have violated their discharge permits by (1) discharging unauthorized effluents from Defendants' facility; (2) discharging approved effluents in excess of Defendants' permit limitations; and (3) discharging effluents—authorized or unauthorized—from an unpermitted metal pipe adjacent to Outfall 001, cracks and fissures in the facility's walls and/or foundation, a stormwater outfall, and various other parts of the facility. *Id.* at ¶¶ 83–97. According to Plaintiff, these actions not only violate the permits and safety protocols by which Defendants are bound, but they have also resulted in a notable impact on local ecological life including the fluctuation of pH levels in the Jones Falls stream, excessive algae growth, and "fish kill events" during which approximately 1,000 dead fish were reported dead in the Jones Falls stream directly adjacent to the vinegar manufacturing facility with an accompanying "strong smell of vinegar." *Id.* at ¶¶ 98–120. Thus, Plaintiff alleges that Defendants violated Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342; COMAR 26.08.02.03-2; and the RCRA, 42 U.S.C. § 6972(a)(1)(B). *Id.* at ¶¶ 121–57.

## II.     STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 15(a)(2), when a party's timeframe for amending its pleading as a matter of course expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." "Under Rule 15(a), the district court 'has broad discretion concerning motions to amend pleadings . . . .'"  *Macsherry v. Sparrows Point, LLC*, No. ELH-15-22, 2016 WL 8669914, at *8 (D. Md. Oct. 28, 2016) (quoting *Booth v. Maryland*, 337 F. App'x 301, 312 (4th Cir. 2009) (per curiam)) (other citation omitted).  The Supreme Court of the United States has stated:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afford an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'  Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) ("Leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.").

Regarding futility, "[t]here is no question, to be sure, that leave to amend would be futile when an amended complaint could not survive a Rule 12(b)(6) motion."  *Morgan v. Coppin State Univ.*, No. SAG-20-0427, 2020 WL 6485083, at *2 (D. Md. Nov. 4, 2020) (quoting *Aura Lights US Inc. v. LTD Int'l LLC*, Nos. GLR-15-3198 & GLR-15-3200, 2017 WL 2506127, at *5 (D. Md. June 8, 2017)) (internal citation omitted).  "Yet, the Court need not apply the Rule 12(b)(6)

6

standard when determining whether leave to amend would be futile. [Rather], [t]he Court applies a much less demanding standard: whether the proposed amendment is clearly insufficient or frivolous on its face." *Morgan*, 2020 WL 6485083 at *2 (quoting *Aura Lights US Inc.*, 2017 WL 2506127 at *5) (internal citation and quotation marks omitted).

### III.   DISCUSSION

After thorough review of the record, the Court cannot conclude that Plaintiff's Motion is tainted by undue delay, bad faith, or a dilatory motive. *See Putsche v. Alley Cat Allies, Inc.*, No. PWG-17-255, 2018 WL 11580413, at *3–4 (D. Md. Dec. 14, 2018) (granting leave to amend in part because there was no undue delay, bad faith, or dilatory motive on the part of the movant). Rather, Plaintiff seeks to amend its Complaint by incorporating information that was not previously available to Plaintiff but was subsequently disclosed through the discovery process by Defendants. *See id.* at *3 (noting that leave to amend was proper in part because the plaintiff was supplementing their complaint "to add the facts that came to light in the past two months"); *Williams v. N. Am. Partners in Anesthesia (Md.), LLC*, No. CV AW-04-3369, 2006 WL 8457041, at *2 (D. Md. May 2, 2006) (granting leave to amend where "Plaintiff seeks to amend on the basis of evidence allegedly discovered *after* the earlier amendment") (emphasis in original). Moreover, Plaintiff sought leave to amend prior to the deadline for joinder of additional parties and amendment of pleadings previously set forth by this Court. *See* (ECF No. 13). Nor can the Court conclude that sufficient prejudice would be imposed on Defendants by permitting Plaintiff to file its Second Amended Complaint that would warrant denying the Motion.

Defendants oppose the Motion, though, arguing that Plaintiff's proposed amendments would be futile because "it fails to allege any facts that could support the addition of Kerry Holding Co. as a defendant to a [CWA] and [RCRA] suit." (ECF No. 20 at p. 2). Moreover, Defendants

argue that "the proposed amendment is also futile because it would run afoul of the CWA and RCRA notice requirements for citizen suits." *Id.*  Each argument is discussed in turn below.

With regard to Kerry Holding Co.'s potential liability under the CWA and RCRA, "Courts have held that 'the CWA imposes liability both on the party who actually performed the work and on the party with responsibility for or control over performance of the work.'" *Assateague Coastkeeper v. Alan & Kristin Hudson Farm*, 727 F. Supp. 2d 433, 442 (D. Md. 2010) (quoting *United States v. Lambert*, 915 F. Supp. 797, 802 (S.D.W. Va. 1996)).  Moreover, the Supreme Court held in *United States v. Bestfoods* that, under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), "a corporate parent that actively participated in, and exercised control over, the operations of the facility itself may be held directly liable in its own right as an operator of the facility."  523 U.S. 51, 55 (1998).  Although the CERCLA is not the CWA or RCRA, federal courts have subsequently held that defendants may be liable for CWA and RCRA violations under that same standard.  *See, e.g.*, *Conservation L. Found., Inc. v. Shell Oil Prod. US*, No. CV 17-00396-WES, 2022 WL 2353065, at *2 n.3 (D.R.I. June 30, 2022) ("While *Bestfoods* interprets CERCLA, its interpretation also applies to questions of RCRA and CWA liability."); *LeClercq v. Lockformer Co.*, No. 1:00-cv-7164, 2002 WL 908037, at *2 (N.D. Ill. May 6, 2002) ("[T]he statutory definition of 'owner' and 'operator' are the same under the RCRA and CERCLA, and the standards for owner and operator liability under the two statutes are identical."); *Conservation L. Found., Inc. v. Shell Oil Co.*, 628 F. Supp. 3d 416, 441–43 (D. Conn. 2022); *United States v. Jones*, 267 F. Supp. 2d 1349, 1355–61 (M.D. Ga. 2003) (applying CERCLA liability principles to alleged violations of the CWA and Oil Pollution Act*); United States v. Gulf Park Water Co.*, 972 F. Supp. 1056, 1063 (S.D. Miss. 1997) ("The ability to control

the facility, coupled with knowledge of the violation, is also sufficient to impose liability under the CWA."). The Court finds these cases persuasive on this issue.

Here, Plaintiff has sufficiently alleged at this early stage in the case *sub judice* that Kerry Holding Co. "actively participated in, and exercised control over, the operations of the facility" such that it may be responsible for the alleged violations. *Bestfoods*, 523 U.S. at 55. While Defendants maintain that the only facts alleged by Plaintiff highlight merely that a parent-subsidiary relationship exists, Plaintiff's proposed Second Amended Complaint frames the above allegations as having been jointly committed by *all* Defendants. *See generally* (ECF No. 19-9). In other words, Plaintiff does not allege that the above factual background applies only to Defendants Fleischmann's and Kerry Inc. with purported Defendant Kerry Holding Co. being vicariously liable simply by virtue of its status as a parent company; rather, Plaintiff's Second Amended Complaint alleges that Kerry Holding Co. engaged in the same actions as Fleischmann's and Kerry Inc. through the Second Amended Complaint's repeated use of "Defendants" in the plural to include all three entities. In fact, federal courts have previously concluded in the face of similar arguments that such "group" allegations regarding a parent company's participation in CWA and RCRA violations are sufficient to withstand a Rule 12 motion. *See Shell Oil Products US*, 2022 WL 2353065 at *2 ("Since corporate 'control' is a fact-specific inquiry and may support a finding of direct liability under both the CWA and RCRA, Plaintiff's 'group' allegations . . . pass muster to state a plausible claim applying the Rule 12(c) standard of review . . . ."); *Conservation L. Found., Inc. v. Shell Oil Co.*, 628 F. Supp. 3d at 442 (same); *see also, e.g.*, *Tapp v. Wash. Metro. Area Transit Auth.*, 306 F. Supp. 3d 383, 392 (D.D.C. 2016) ("The standard of review for motions pursuant to Rule 12(c) essentially mirrors the standard for motions to dismiss under Rule 12(b)."). Accordingly, the Court concludes that Plaintiff's Proposed Second Amended Complaint would

not be futile for lack of asserting a plausible claim for relief against Kerry Holding Co. under the CWA and RCRA based on parent-subsidiary liability.

Nor does the Court find that adding Kerry Holding Co. as a defendant would be futile for running afoul of the CWA's and RCRA's notice requirement for citizen suits. *See* (ECF No. 20-1 at pp. 10–13). The CWA provides that "No action may be commenced . . . prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the [EPA] Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator . . . ." 33 U.S.C. § 1365(b)(1). The RCRA likewise requires that a plaintiff give at least a sixty-day notice to "any alleged violator." 42 U.S.C. § 6972(b)(1)(A)(iii); *see also Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 399 (4th Cir. 2011) (noting that abiding with the notice and delay requirements of both the CWA and RCRA are "mandatory conditions precedent to commencing suit" under either statutory scheme) (citing *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989)). Defendants argue that these conditions were not met because "The [notice of intent to sue] letter, sent by certified mail, was not delivered to Kerry Holding Co., the letter is not addressed to Kerry Holding Co., and Kerry Holding Co., is not mentioned or named anywhere in the [notice of intent to sue letter]." (ECF No. 20-1 at p. 12). This argument is unpersuasive. Although Plaintiff's Notice of Intent to Sue does not specifically name "Kerry Holding Co." as a potential defendant, the Notice nevertheless states that "The purpose of this letter is to notify *the owners and operators* of" the facility "of [Plaintiff's] intent to file suit . . . ." (ECF No. 1-2 at p. 3) (emphasis added). Combined with the fact that the Notice was sent to Kerry Holding Co.'s resident agent, Defendants had ample notice that Plaintiff's intended to file suit against all owners

and operators of the facility, including Kerry Holding Co.—the parent company and owner of the already-named Defendants.[4]

This is further supported by the text of the applicable federal regulations. Regarding the CWA, 40 C.F.R. § 135.3(a) provides that "Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify . . . the person or persons responsible for the alleged violation . . . ." Regarding the RCRA, 40 C.F.R. § 254.3 states that "Notice regarding an alleged violation of a permit, standard, regulation, condition, requirement, or order which has become effective under [the RCRA] shall include sufficient information to permit the recipient to identify the specific . . . person or persons responsible for the alleged violation . . . ." By stating in its Notice that Plaintiff intended to sue all owners and operators of the vinegar facility in question, the Defendants possessed "sufficient information" to identify Kerry Holding Co.—the owner and parent company of Fleischmann's—as an entity responsible for the alleged violation and subject to Plaintiff's ensuing lawsuit. "The notice provisions [of both the CWA and RCRA] serve the same purposes: (1) to allow the government to take responsibility for enforcing environmental laws thus obviating the need for a citizen suit; and (2) to give the alleged [] violator the opportunity to bring itself into compliance with the statutes rendering a citizen suit unnecessary." *Hernandez v. Esso Standard Oil Co. (Puerto Rico)*, 571 F. Supp. 2d 305, 310 (D.P.R. 2008) (citing *Hallstrom*, 493 U.S. at 29); *see also Midshore Riverkeeper Conservancy, Inc. v. Franzoni*, 429 F. Supp. 3d 67, 73 (D. Md. 2019) ("Congress implemented the notice requirement to allow government agencies, in the first instance, to enforce the relevant regulations, and to allow the alleged violator, if it wishes, to take

---

[4] *See* (ECF No. 1-2 at p. 2; ECF No. 23 at p. 9)); *The Corporation Trust Incorporated: D00076018*, MD. DEP'T OF ASSESSMENTS & TAX'N, http://egov.maryland.gov/BusinessExpress/EntitySearch (choose "Department ID" from dropdown; then enter "D00076018"; then click "search").

appropriate steps toward compliance before being sued."). Plaintiff's Notice provided Kerry Holding Co. with the opportunity to bring itself and the vinegar facility it owns into compliance with the CWA and RCRA in line with the congressional purposes underlying the citizen suit notice provisions of each statute. Accordingly, the Court cannot conclude that Plaintiff's Second Amended Complaint "is clearly insufficient or frivolous on its face." *Morgan*, 2020 WL 6485083 at *2.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 19) is **GRANTED**. Accordingly, it is hereby **ORDERED** that the Clerk is directed to file the clean copy of Plaintiff's Second Amended Complaint (ECF No. 19-8) and accompanying exhibits attached to Plaintiff's Motion (ECF No. 19).


Date: <u>October 27, 2023</u>                               /s/
                                                J. Mark Coulson
                                                United States Magistrate Judge